[S. F. No. 5652. Department One.—October 1, 1910.]

## SADIE LAWSON, Appellant, v. ALFRED B. LAWSON, Respondent.

PUBLIC OFFICERS—GARNISHMENT OF SALARY—STATUTE AUTHORIZING IS CONSTITUTIONAL.—Section 710 of the Code of Civil Procedure, providing for the garnishment of the salaries of certain public officers at the instance of their judgment creditors, is not violative of the provisions of the constitution inhibiting special legislation, and requiring that a general law shall have a uniform operation.

ID.—SALARY OF JUSTICE OF PEACE.—That section is applicable to the salaries of all such public officers and employees as to whom its application is not inhibited by reason of some provision of the constitution, and is applicable to the salaries or fees of justices of the peace.

ID.—MEMBER OF FAMILY—MOTHER PERMANENTLY RESIDING APART FROM SON.—The mother of an adult judgment debtor, who permanently resided apart from him, and to whose support he was under no legal obligation to contribute, is not a member of his family, within the meaning of subdivision 10 of section 690 of the Code of Civil Procedure, exempting from execution the earnings of a judgment debtor necessary for the use of his family.

APPEAL from an order of the Superior Court of the City and County of San Francisco directing the disposition of certain moneys placed within the control of the Superior Court under section 710 of the Code of Civil Procedure. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

H. H. McPike, and Crittenden Thornton, for Appellant.

Leon Samuels, and Jacob S. Meyer, for Respondent.

ANGELLOTTI, J.—This is an appeal by plaintiff from an order directing the disposition of certain money placed within the control of the superior court under the provisions of section 710 of the Code of Civil Procedure. Plaintiff was the judgment creditor under a decree of divorce which, among other things, required the defendant to pay to plaintiff one hundred dollars per month for her maintenance and support. On May 31, 1910, plaintiff filed with the auditor of the city and county of San Francisco, of which city and county defendant was one of the justices of the peace, a duly authenticated transcript of the judgment, accompanied by her affidavit stating the exact amount due her from defendant under said judgment and that she desired to avail herself of the provisions of said section 710 of the Code of Civil Procedure. At that time there was due and owing to defendant from said city and county the sum of three hundred dollars, salary as justice of the peace, which was less than the amount due on the judgment. The money due defendant having been placed by the auditor within the control of the court rendering the judgment as required by section 710 of the Code of Civil Procedure, defendant gave notice of a motion for an order directing the payment of all of the same to him as property exempt from execution under subdivision 10 of section 690 of the Code of Civil Procedure, serving and filing therewith his affidavit making such claim of exemption and stating the facts upon which the claim was based. At the hearing of the motion further evidence was taken. The trial court concluded that two hundred dollars of said salary was exempt and the remainder not exempt, and made its order requiring the payment of two hundred dollars to defendant and one hundred dollars to plaintiff. This is the order appealed from.

1. It is established by the decision in *Ruperich* v. *Baehr*, 142 Cal. 190, [75 Pac. 782], that section 710 of the Code of Civil Procedure is not violative of the provisions of our constitution inhibiting special legislation and requiring that a

general law shall have a uniform operation. It is further established by that decision and the decision in *Payne* v. *Baehr*, 153 Cal. 441, [95 Pac. 895], that the section is applicable to the salaries of all such public officers and employees as do not come within the term "constitutional officers" as that term is used in *Ruperich* v. *Baehr*, 142 Cal. 190, [75 Pac. 782]. In that case the court, expressly reserving the question whether the constitution prohibited its application to certain officers, said: "But with respect to those clearly within legislative control, if it fairly appears that by this act, properly construed, the legislative intent to declare as its policy that the salaries or wages may be thus diverted to the payment of debts of such officers and employees is manifested by the language used, then the courts are bound by this declared policy, with respect to the officers to whom it can be applied." The effect of the two cases cited is that the section must be held applicable to the salaries of all officers as to which its application is not inhibited by reason of some provision of the constitution. Assuming for the purposes of this decision that with relation to some officers the effect of existing constitutional provisions may be to prevent the application of this section, we are satisfied that there is nothing in the constitution precluding its application to salaries or fees of justices of the peace. Such salaries or fees are not fixed by the constitution, and there is no provision therein, as in the case of some officers, that they "shall receive for their service" a compensation, fixed either by the constitution or to be fixed in some other way. Nor is there as to such officers any provision, as in the case of some officers, to the effect that the compensation so to be received, whether fixed by constitution or otherwise, shall not be diminished during the term for which the incumbent shall have been elected. They are simply mentioned as one of the tribunals in which the judicial power of the state is vested (sec. 1, art. VI), the legislature is authorized to determine their number in townships, cities and towns and cities and counties, and to fix their powers, duties, and responsibilities (sec. 11, art. VI), and it is expressly provided that "no judicial officer, except justices of the peace and court commissioners, shall receive to his own use any fees, or perquisites of office." (Sec. 15, art. VI.) There is nothing in any of the provisions of the constitution effectual to preclude the legislature from

declaring and enforcing as to justices of the peace the policy
of diverting their salaries or fees so far as may be necessary
to the payment of such of their debts as are evidenced by
judgment. The question of the wisdom of such a policy is
not one within the province of the courts.

2. Section 710 of the Code of Civil Procedure provides that
"upon the receipt by any court of money under the provisions
of this act so much thereof as is not exempt from execution
shall be paid to the judgment creditor, the balance to the judg-
ment debtor."

Defendant's claim that any of this money was exempt from
execution is based on provisions of subdivision 10 of section
690 of the Code of Civil Procedure which, so far as is material
here, is as follows: "The earnings of the judgment debtor for
his personal services rendered at any time within thirty days
next preceding the levy of execution or attachment, when it
appears by the debtor's affidavit or otherwise, that such earn-
ings are necessary for the use of his family, residing in this
state, supported in whole or in part by his labor." This is one
of the subdivisions of a section declaring what property is
exempt from execution or attachment.

Various contentions are made by plaintiff in response to the
claim of exemption under this subdivision. Among other con-
tentions it is substantially urged that, except in so far as his
divorced wife constituted his family defendant had no
"family," within the meaning of that word as used in sub-
division 10 of section 690 of the Code of Civil Procedure. If
this contention be well based it is apparent that there was no
exemption in his favor under this subdivision. There is no
conflict in the evidence material on this proposition. The
alleged family, according to defendant's affidavit, "consists of
my mother and myself." It was shown by the plaintiff and in
no way disputed by defendant that the defendant resided in
the city and county of San Francisco and that his mother re-
sided in the city of Oakland, Alameda County. We construe
the evidence given on this point as showing without conflict
that this adult son and his mother had no abode in common,
but permanently resided apart, one in one county and the
other in another county. There was no showing that the
mother was a "poor person who is unable to maintain" herself
by work, and hence there was no *legal* duty shown on the part

CLVIII Cal.—29

of the defendant to maintain her to the extent of his ability, under section 206 of the Civil Code. Divergent as may be the authorities upon the exact meaning of the word "family" when used in exemption and homestead statutes, we have found no basis for such construction as would make defendant's mother, under the circumstances above stated, a part of his family within the meaning of subdivision 10 of section 690 of the Code of Civil Procedure. The words "his family" as used in this statute imply a collection of persons of which he is the head. Under the most liberal construction given by any of the decisions they would not include the mother of a judgment debtor when she is not a member of his household, and when her circumstances are not such as to impose upon him the legal duty to maintain her. Were she a member of his household, even though temporarily absent therefrom, she might properly be held to be a part of "his family" within the meaning of the provision, for there are many authorities in support of the proposition that the word "family" as here used means a collection of persons living together under one head, under such circumstances or conditions that the head is under a legal or moral obligation to support the other members, and the other members are dependent upon him for support. In 12 Am. & Eng. Ency. of Law, p. 89, 2d ed., this is said to be the definition supported by the weight of authority. Under such circumstances the son would be the "head of a family" according to the definition declared by our statute relative to the selection of homesteads. (Civ. Code, sec. 1261.) As noted in 2 Freeman on Executions, section 222, however, the above definition is not absolutely correct, for it is clear that one may be a member of the debtor's "family" although residing apart from him, and this is clearly implied by the language in subdivision 10 of section 690 of the Code of Civil Procedure, "for the use of his family residing in this state." The mere fact that a man's wife and minor children reside in a different place from him does not render them any the less members of "his family" within the meaning of our statute. Such persons constitute "his family" in the strictest sense of the words and come fully within the objects of the exemption statutes. (See *Pettit* v. *Muskegon etc. Co.,* 74 Mich, 214, [41 N. W. 900].) But it seems clear that they are the only relatives who can properly be held to be members of "his family" within

the meaning of the statute, without being members of his household or residing with him, with the possible exception of such other relatives as to whom exists on his part the *legal* obligation of support and maintenance.   Our conclusion on this point is amply supported by the authorities.   (See 2 Freeman on Executions, sec. 222, and cases there cited.)   The showing made in this case was not sufficient to warrant the conclusion that defendant's mother was a member of "his family" within the meaning of the exemption statute.   So far as was made to appear, the defendant therefore had no family on account of which exemption could legally be allowed, and the court should have directed that the whole sum placed under its control by the auditor be paid to plaintiff on account of her judgment.

The order appealed from is reversed.

Shaw, J., and Sloss, J., concurred.