[Civ. No. 41360. First Dist., Div. One. Oct. 26, 1978.]

WILLIAM M. POLLAK, Plaintiff and Respondent, v.
WESLEY J. KINDER, as Insurance Commissioner, etc.,
Defendant and Appellant.

 .

COUNSEL

Evelle J. Younger, Attorney General, and Mervin R. Samuel, Deputy Attorney General, for Defendant and Appellant.

Dobbs & Nielsen and James R. Parrinello for Plaintiff and Respondent.

**OPINION**

**RACANELLI, P. J.**—The Insurance Commissioner of the State of California (hereinafter Commissioner), sued herein as Department of Insurance of the State of California, appeals from a judgment granting a writ of mandate.

Section 1738 of the Insurance Code[1] provides for the suspension of an insurance agent's license for any cause constituting grounds for denial of a license application under section 1668, which includes a showing of "incompetency or untrustworthiness in the conduct of any business . . . ." (Subd. (j).) Resolution of the issues presented by the Commissioner's appeal turns upon an interpretation of the term "incompetency" within the meaning of the statutory provision. For reasons which we explain, we conclude that the trial court correctly determined that no incompetency was shown. Accordingly, we affirm the judgment.

*Facts*

The parties concede the facts are undisputed which, in relevant part, are summarized as follows:

Respondent, a licensed insurance agent for over 20 years, submitted an application for workers' compensation insurance in behalf of the insured which failed to include a specific request for coverage for an employee-relative residing in the insured's household.[2] The policy as issued by the

---

[1] Unless otherwise indicated, all statutory references are to this code.

[2] The application designated the employee simply as a "domestic inservant" with a note attached by respondent requesting the carrier's agent to "include Norina A. Mancini,

carrier contained a standard restrictive endorsement which excluded coverage for industrial injury sustained by a relative residing in the insured's household. Two annual policy renewals were thereafter obtained by respondent and a business associate on an "as is" or original application basis thus perpetuating the omission. The oversight was not discovered until after a claim was filed in 1971 on behalf of the injured relative, the insured's sister. Following rejection of the claim by the carrier, respondent unsuccessfully sought the aid of the Commissioner in obtaining payment of the claim. Shortly thereafter, the Commissioner filed a formal accusation charging that respondent's conduct in failing (1) to obtain the specified coverage and (2) to properly examine the issued policy and renewal coverage constituted incompetency.

Upon such stipulated facts, augmented by testimony produced by respondent, the administrative hearing officer rendered a proposed decision, adopted by the Commissioner, determining respondent's neglect as incompetency[3] and imposing a 10-day period of suspension or $100 fine in lieu thereof. (See § 1748.) Following an independent appraisal of the administrative record, the trial court concluded that only negligence as distinguished from incompetency was demonstrated. The Commissioner appeals from the ensuing judgment mandating the Commissioner to set aside and reconsider his decision in light of the court's findings and conclusions.

### The Meaning of "Incompetency"

Although the Legislature has provided a similar standard of unprofessional conduct for disciplinary purposes for a number of licensed business activities,[4] neither party has cited nor have we independently found any decision interpreting the requisite standard of conduct under the provisions of the Insurance Code or other regulatory statutes. The precise question thus appears to be one of first impression.

In discussing an earlier version of the disciplinary statute, the court in *Steadman* v. *McConnell* (1957) 149 Cal.App.2d 334 [308 P.2d 361],

sister of assured, for coverage for Workmen's Compensation." Full premiums were paid each year for the included employee's coverage.

[3]The decision expressly limited its finding of incompetency "only to the matters at issue . . . and not as reflecting on respondent's handling of his insurance business as a whole" and contained the added finding that respondent's "long otherwise unblemished record . . . must also be taken into account in any appraisal of his competence in general, . . ."

[4]Sanctions may be imposed upon a showing of incompetency under the following statutes: Business and Professions Code sections: 2361, subdivision (d) (medical doctors);

examined an accusation framed in the language of the then existing statute (former § 1731, subds. (d), (e), and (f), repealed in 1959)[5] charging the licensee with misrepresentation, dishonest conduct, incompetency and untrustworthiness in inducing the purchase of a policy of life insurance. In upholding the Insurance Commissioner's findings of *intentional* misrepresentation and *fraudulent* acts, the court focused on *active* conduct involving dishonesty and breach of ethical principles, as distinguished from technical ability or competence, justifying disciplinary measures. In commenting upon the sufficiency of the accusation, it reasoned that "The meaning of such words as dishonesty, untrustworthiness, etc. as used in the statute, is well understood and should not be given a forced and unnatural interpretation." (*Id.,* at p. 338.)

Contrary to the Commissioner's argument, *Steadman* provides no authority for either the meaning of the term "incompetency" or for the proposition that a single act of *careless* performance warrants imposition of sanctions. Assuming, arguendo, as the Commissioner contends, that the imprecise statutory phrase is "incapable of exact definition," we may nevertheless look to parallel judicial precedents in ascertaining the meaning of the language used by the Legislature. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33]; 45 Cal.Jur.2d, Statutes, § 110, p. 622.)

The technical term "incompetency" is a relative one generally used in a variety of factual contexts to indicate an absence of qualification, ability or fitness to perform a prescribed duty or function. (See, e.g., *Hughes* v. *Hughes* (1954) 125 Cal.App.2d 781 [271 P.2d 172] [husband's incompetency to rebut presumption of legitimacy]; *Board of Education* v. *Ballou* (1937) 21 Cal.App.2d 52 [68 P.2d 389] [sufficiency of notice charging teacher with incompetency]; *Guardianship of McCoy* (1941) 46 Cal.App.2d 494 [116 P.2d 103] [parent's competency to act as guardian].) It is commonly defined to mean a general lack of present ability to perform a given duty as distinguished from inability to perform such duty as a result of mere neglect or omission.[6] Such an interpretation is totally

2746.6, subdivision (a)(1) (nurse-midwives); 2761, subdivision (a)(1) (licensed nurses); 2878, subdivision (a)(1) (vocational nurses); 3090 (gross ignorance or inefficiency) (optometrists); 4350.5, subdivision (b) (*gross* incompetence) (pharmacists); 5585 (architects); 5672 (*gross* incompetence) (landscape architects); 6775, subdivision (b) (engineers); 8780, subdivision (a) (civil engineers); Education Code section 87732, subdivision (d) (teachers); and Government Code section 19572, subdivision (b) (state employees).

[5]The provisions of section 1668, subdivisions (i), (j), and (k), are substantially identical to those contained in the earlier version.

[6]Legal and standard dictionaries and compendia provide similar definitions: "INCOMPETENCY. Lack of ability, legal qualification, or fitness to discharge the

consistent with the declared legislative objective of public protection by requiring a minimum standard of professional conduct on the part of those licensed to engage in regulated activities. (See § 1737.) As correctly observed by the trial judge, the terms negligence and incompetency are not synonymous; a licensee may be competent or capable of performing a given duty but negligent in performing that duty. This fundamental conceptual distinction has long been recognized in California law (*Peters v. Southern Pacific Co.* (1911) 160 Cal. 48 [116 P. 400]; *Still v. San Francisco etc. Ry. Co.* (1908) 154 Cal. 559 [98 P. 672]) and in other jurisdictions (see cases compiled in 65 C.J.S., Negligence, § 1(8), p. 451; 20A Words and Phrases (1959) "Incompetent,"pp. 320-321, and Supp. (1978) p. 43). In defining a similar operative term in the context of an employer's liability for injury caused by an "incompetent" employee, our state Supreme Court has emphasized that basic distinction in explaining that "Incompetency connotes the converse of reliability . . ." (*Still v. San Francisco etc. Ry. Co., supra,* at p. 564) and that "a single act of negligence . . . may be attributable to remissness in discharging known duties, rather than . . . incompetency respecting the proper performance." (*Peters v. Southern Pacific Co., supra,* at p. 62.) The Legislature has consistently acknowledged that basic distinction in enacting and amending a number of regulatory statutes authorizing sanctions for either incompetence *or* negligence.[7] Thusly, to construe the one as merely synonymous with the other is inconsistent with general principles of construction requiring that meaning and effect be accorded to all of the statutory parts and that an interpretation of a statute be avoided which renders some of its words surplus. (*Azusa Western, Inc.* v. *City of West Covina* (1975) 45 Cal.App.3d 259, 263 [119 Cal.Rptr. 434]; see Code Civ. Proc., § 1858.)

required duty." (Black's Law Dict. (rev. 4th ed. 1968) p. 906.) "INCOMPETENCY. Inefficiency; a lack of some requisite ability; . . . —the absence of a physical, moral, or intellectual quality, incapacitating one to perform the duties of his office, characterized by gross neglect of duty or gross carelessness in the performance of duty, . . ." (Ballentine's Law Dict. (3d ed. 1969) p. 602.) "INCOMPETENCY. Lack of ability or fitness to discharge the required duty." (1 Bouvier's Law Dict. (3d rev. ed. 1914) p. 1528.) "INCOMPETENCY. The quality of being incompetent [defined—inter alia—as] . . . lacking specific qualifications to perform a legal function or duty or exercise a legal right." (Webster's Third New Internat. Dict. p. 1144.) "INCOMPETENCE or INCOMPETENCY. A relative term without technical meaning, but having a common and approved usage. The term may include something more than physical and mental attributes; it may include want of qualification generally, . . .; and may be defined . . . as meaning disqualification; inability; incapacity; general lack of capacity of fitness, or lack of the special qualities required for a particular purpose; . . . lack of ability, legal qualification, or fitness to discharge the required duty; . . ." (42 C.J.S. 539.)

[7]The following are illustrative:
Business and Professions Code sections: 2361, subdivision (b) (gross negligence);

■ The record discloses a single, isolated transaction involving nonfeasance falling far short of a demonstrated inability to perform the general duties and functions of a licensed insurance agent; indeed, the administrative findings point to the contrary (see fn. 3, *ante*). While it is conceivable that a single act of misconduct under certain circumstances may be sufficient to reveal a *general* lack of ability to perform the licensed duties, thereby supporting a finding of incompetency under the statute, we reject the notion that a single, honest failing in performing those duties—without more—constitutes the functional equivalent of incompetency justifying statutory sanctions. In so holding we engage neither in hyperbole nor strained interpretation of the underlying prophylactic purpose of the statutory scheme to assure compliance with professional standards of conduct for the protection of the public. (§ 1737.)

### *Sufficiency of the Findings*

Finally, we have examined the Commissioner's complaint that the findings are inadequate, inconsistent and unsupported by the evidence. The complaint is patently untenable.

■ Findings serve the limited function of informing the parties of disputed factual determinations in order that a claim of error may be properly reviewed upon application for a new trial or appeal. (*Baron* v. *Baron* (1970) 9 Cal.App.3d 933, 937 [88 Cal.Rptr. 404]; *Sutter* v. *Madrin* (1969) 269 Cal.App.2d 161, 169 [74 Cal.Rptr. 627].) As noted, the facts were undisputed and the evidence uncontroverted; thus the question presented is solely one of law. Once the court has made material findings on the ultimate facts in issue, as here, no further findings upon probative or evidentiary facts are necessary to sustain those findings. (*Kanner* v. *Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 567 [78 Cal.Rptr. 25]; see also 4 Witkin, Cal. Procedure, Trial, § 327, p. 3130.) We find no error as contended.

The judgment is affirmed.

Elkington, J., and Newsom, J., concurred.

---

2746.6, subdivision (a)(1), and 2761, subdivision (a)(1) (incompetence or gross negligence); 2878, subdivision (a)(1) (incompetence or gross negligence); 5584 and 5671 (negligence): 5672 (incompetence): 6775, subdivision (b) (negligence or incompetency): 8780, subdivision (a) (negligence or incompetency).